## Samuel G. Alschuler, Defendant in Error, v. Postal Telegraph-Cable Company, Plaintiff in Error.

### Gen. No. 20,061.

1. TELEGRAPHS AND TELEPHONES, § 27*—*when limitations on liability inapplicable.* Conditions on the back of a telegraph blank limiting liability in certain cases, which upon their face apply only to "unrepeated messages," are inapplicable where the sender contracted and paid the additional charge imposed for a "repeated message."

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

2. TELEGRAPHS AND TELEPHONES, § 27*—*what not an assent to limitations on liability.* Where the face of a telegraph blank bore a printed direction to the sender to "read the conditions on the back and sign name and address thereon *for reference,*" the fact that the sender signed his name and address on the back of the blank in the place provided for that purpose, followed by the printed words "sender's name and address," is not tantamount to an assent to be bound by conditions limiting liability in certain cases, which appeared above such signature.

Error to the Municipal Court of Chicago; the Hon. JOHN J. ROONEY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Affirmed. Opinion filed March 11, 1915.

JACOB E. DITTUS, for plaintiff in error.

LEON S. ALSCHULER, for defendant in error.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Samuel G. Alschuler, defendant in error, hereinafter called the plaintiff, sued the Postal Telegraph-Cable Company, plaintiff in error, hereinafter called the defendant, in the Municipal Court of Chicago, in an action of the fourth class to recover $154.95 damages alleged to have been sustained by the plaintiff by reason of an error in the transmission of a cablegram sent from Chicago by the plaintiff to one Edler at Berlin, Germany. The case was tried by the court without a jury and a judgment was entered against the defendant in the sum of $154.95, and this writ of error followed. The cablegram was delivered to the defendant on August 30, 1913, and the message, as written by the plaintiff, read as follows: "Five Hundred pencil sets fifty-nine nought nine bill July twenty-fourth, stamped Sulzberger & Sons Co. Conditional fifteen day shipment. Cable acceptance." The message was delivered to Edler with the word "Sulberger" in the place of the word "Sulzberger," and

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Edler made the pencils with the stamp thereon reading "Sulberger & Sons Co." instead of "Sulzberger & Sons Co." Sulzberger & Sons Co., for whom the pencils were ordered, refused to accept them from the plaintiff, because of the said misspelling, and the plaintiff was therefore compelled to sell the pencils for $26.45, whereas he would have received $178.50 from Sulzberger & Sons Co. had the pencils been properly stamped. The case was tried on a stipulation of facts. The material parts of the same, so far as the defendant is concerned, are as follows: "That the Postal Telegraph-Cable Company did in fact transmit said message correctly to New York City over defendant's lines and repeated the same to its Chicago office and delivered said cablegram to the Commercial Cable Company, a corporation, for further transmission; that the said Commercial Cable Company correctly transmitted said message to its office connecting with the German Government cable lines, and repeated the same to its New York office and delivered said message to the German Government cable office for further transmission, and that the error in question was due to the negligence of some employe of the German Government lines;" that that following "conditions" (*inter alia*) are upon the back of the cablegram blank: "This Company will not assume any responsibility in respect to any message beyond the terminus of its own lines." "This Company is hereby made the agent of the sender without liability to forward any message by the lines of any other company to reach its destination;" that the plaintiff signed his name and address at the foot of the back of the cablegram. This last circumstance will be hereafter referred to more specifically in this opinion.

There is but one question presented by this writ of error. The defendant contends that it had the right under the law to contract with the plaintiff to limit

its liability to damages occurring by reason of errors on its own lines; that by the contract between the parties in this case "the plaintiff was required to subscribe his name to the conditions on the back of the blank, and he did so subscribe his name," and that he thereby agreed to have the message sent subject to all the said conditions, and that by reason of the two conditions, heretofore referred to, the defendant was relieved from any negligence occurring beyond its own lines, and that as the error in the transmission of the message was due to the negligence of some employee of the German Government lines, the defendant is not liable in this case. Plaintiff contended in the lower court, and contends here, that by reason of the Carmack Amendment to the Interstate Commerce Act of Congress, the defendant could not contract to avoid liability for the negligence of the employees of the German Government lines, but in the view that we have taken of the case it will not be necessary for us to pass upon this contention of the plaintiff.

It appears from the stipulation of facts that the defendant accepted the cablegram from the plaintiff "as a repeat message, in order that any mistakes occurring in transmission might be apprehended and corrected, and that the defendant for such repeat service made an additional charge of one-quarter of the regular rate in accordance with its established customary rates." The blank was furnished to the plaintiff by the defendant, and it is very evident from an inspection of it that it was a form used by the telegraph company for unrepeated messages. Just above the place on the face of the blank, where the sender of a cablegram writes the message, is printed the following words: "Send the following cablegram, without repeating, subject to the terms and conditions printed on the back hereof, which are hereby agreed to." On the back of the blank is printed (*inter alia*) the following: "To guard against mistakes or delays, the sender

of a message should write it legibly and order it RE-PEATED; that is, telegraphed back to the sending station for comparison. For such repeating, an additional charge of one-quarter the regular rate will be made. It is agreed between the sender of the message on the face hereof and this Company, that said Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, or mis-delivery, of any unrepeated message, beyond the amount of that portion of the charge which may or shall accrue to this Company out of the amount received from the sender for this Company and the other companies by whose lines such message may pass to reach its destination; and that this Company shall not be liable for mistakes in the transmission or delivery, or for non-delivery, or mis-delivery, of any repeated message beyond fifty times the extra sum received by this Company from the sender for repeating such message over its own lines. * * * This is an UNREPEATED message and is transmitted and delivered by request ·of the sender under the conditions named above.''

As we understand the argument of the defendant, it does not contend that the plaintiff would have been bound by the conditions on the back of the blank had he not signed his name and address on the back of the same, but it insists that the plaintiff, by subscribing his name as he did, assented to the said conditions and is bound by them. Whether we correctly understand the defendant's contention or not, we are satisfied that the plaintiff was not bound by the conditions relied upon by the defendant, because he contracted and paid for a repeated message and the said conditions clearly did not apply to a message of that character. Even if he read all the conditions on the back of the blank, he would be justified in assuming that the two now relied upon by the defendant only applied to an unrepeated message, and he would be further justified in assuming that he would avoid the effect of

those very conditions by ordering and paying for a repeated message. The fact that the plaintiff signed his name and address on the back of the blank in the manner that he did does not help the defendant's case at all. On the face of the blank and immediately under the place where the sender writes the message are printed the following words: "The sender will please read the conditions on the back and sign name and address thereon *for reference.*" (Italics ours.) On the back of the blank and below the printed conditions, appear two horizontal lines close together and extending across the entire sheet, and below these lines is printed the following: "Sender's name and address." It was opposite these last words that the plaintiff wrote his name and business address.

It is idle for the defendant to argue that the plaintiff bound himself to the conditions on the back of the blank because of the fact that he signed his name and address in the manner that he did. The plaintiff paid for a repeated message, and to hold that he assented to conditions that on their face applied only to unrepeated messages, merely because he wrote his name and address as he did, would be to make of the law a snare. The law is a destroyer, not a creator, of traps.

In the statement of facts in the brief of the defendant, it is stated that the trial court awarded the plaintiff larger damages than he was entitled to under the facts and the law, but as the defendant has not assigned as error nor argued that the damages are excessive, the question of the amount of damages awarded is not before us.

The judgment of the Municipal Court of Chicago will be affirmed.

*Affirmed.*